IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

CHARLES OWENS                                                                               PLAINTIFF

V.                               CASE NO.: 2:12CV00040 BD

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                                        DEFENDANT

MEMORANDUM OPINION AND ORDER

Charles Owens alleges that he has not been able to work since February, 2010, when he had a motor vehicle accident while working as a truck driver. (Tr. 24-25) In Mr. Owens's applications for disability insurance benefits and supplemental security, he alleged disability due to diabetes, high blood pressure, blackouts, emphysema, sleep apnea, and morbid obesity. (Tr. 114) The applications were denied initially and upon reconsideration; and following a hearing, an administrative law judge[1] ("ALJ") found that Mr. Owens was not disabled. (Tr. 9-17) Mr. Owens brings this case challenging the ALJ's determination. (docket entry #11)

*Opinion Evidence*

Mr. Owens complains that the ALJ erred in rejecting the opinion of Robert Hayes, M.D. Mr. Owens testified that he began seeing Dr. Hayes in early 2010. (Tr. 26) Mr. Owens rests much of his argument on a March 4, 2010 letter that Dr. Hayes wrote "To

---

[1]The Honorable W. Thomas Bundy.

Whom It May Concern," stating that Mr. Owens was morbidly obese, had chronic obstructive pulmonary disease ("COPD"), diabetes, sleep apnea and that he was, "unable to work."  (Tr. 344)

An ALJ is obliged to give controlling weight to a treating physician's *medical* opinions that are supported by the record.  See *Ellis v. Barnhart*, 392 F.3d 988, 994-95 (8th Cir. 2005) (citing *Randolph v. Barnhart*, 386 F.3d 835, 839 (8th Cir. 2004); 20 C.F.R. § 404.1527(d)(2)).  A medical source opinion that an applicant is "disabled" or "unable to work," however, involves an issue reserved for the Commissioner and therefore is not the type of "medical opinion" to which the Commissioner gives controlling weight.  *Id*.  (citations omitted).

Further, while medical source opinions are considered by ALJs when assessing residual functional capacity ("RFC"), the final determination of RFC is also left to the Commissioner.  See 20 C.F.R. § 404.1527(e)(2).  Here, the ALJ was right to discredit Dr. Hayes's conclusion that Mr. Owens could not work.

The ALJ also noted that he was giving Dr. Hayes's opinion little weight because he found that it was inconsistent with the medical records as a whole and particularly with the opinion of the state agency's medical consultant.  (Tr. 15)  Inconsistency between the medical evidence and Dr. Hayes's opinion was good reason for discounting the opinion.[2]

---

[2]The regulations provide that the ALJ considers all of the following factors in deciding the weight to give to any medical opinion: (1) examining relationship, (2) treating relationship; (3) supportability of the opinion; (4) consistency; (5) specialization;

Notably, the record reflects that Dr. Hayes might have examined Mr. Owens only once before declaring Mr. Owens unable to work.[3]  Notes from an undated examination of Mr. Owens by Dr. Hayes indicate that Mr. Owens came to Dr. Hayes seeking help with depression and weight loss.  (Tr. 346)  Dr. Hayes diagnosed morbid obesity, diabetes mellitus, hypertension, and depression.  He prescribed Lexapro and a low carbohydrate diet.  At a follow-up visit to Dr. Hayes on March 9, 2010, Mr. Owens reported that he was tolerating the Lexapro well.  (Tr. 346)

The ALJ acknowledged that Mr. Owens's COPD, obstructive sleep apnea, emphysema, hypertension, blackouts, pain, morbid obesity, and diabetes were severe impairments.  But there is substantial evidence in the record for the ALJ to conclude that these conditions did not limit Mr. Owens's ability to work.

A June 18, 2010 pulmonary function study performed by Dr. Sudhir Kumar showed moderate obstruction, but only mild restriction.  (Tr. 352-56)  Mr. Owens's

---

and (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." 20 C.F.R. §§ 404.1527(d), 416.927(d).  If the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the applicant's] record, [the ALJ] will give it controlling weight." *Id*. at §§ 404.1527(d)(2), 416.927(d)(2); *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007).

[3]Dr. Hayes appears to have examined Mr. Owens once in 2004, once in July, 2007, and twice in September, 2007.  However, these examinations are too remote in time to the relevant time period at issue in this case to have any bearing.

3

"blackout" in February 2010, appears to relate to his elevated blood sugar level.[4] He did not have any other subsequent episodes, and his blood sugar level was controlled by medication at the time of the hearing. (Tr. 27) See *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (an impairment controlled by treatment or medication cannot be considered disabling) (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)).

Mr. Owens was diagnosed with severe sleep apnea following a February 18, 2010 sleep study; however, the evaluator noted that Mr. Owens's symptoms were "relieved completely" with C-PAP. (Tr. 343) Mr. Owens also took prescription medication to control his hypertension and depression. (Tr. 32, 346) *Id*.

The ALJ also considered the opinions of the state agency physicians. (Tr. 15) State agency physicians' opinions are expert opinions, and an ALJ must consider these opinions, along with the other evidence of record. 20 C.F.R. § 416.927(f); SSR 96–6p.

In contrast to Dr. Hayes's opinions, Ronald Crow, D.O., a state agency consultant, reviewed all of the medical records, including the letter from Dr. Hayes, and rendered a different medical opinion. (Tr. 363) Dr. Crow found that Mr. Owens was capable of light work, and on July 20, 2010, Bill F. Payne, M.D., also reviewed the evidence and agreed with Dr. Crow's assessment. (Tr. 368)

---

[4]Mr. Owens's blood sugar was over 500 when he was being transported to the hospital after the accident. (Tr. 27)

The ALJ properly considered the opinions of the state agency physicians and did not err by giving more weight to the opinion of Dr. Crow, which was based on a review of the medical evidence, than the opinion of Dr. Hayes, which was unsupported by the objective medical evidence.  See *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence).

***Obesity***

Mr. Owens also complains that the ALJ did not properly consider his obesity; however, the ALJ found morbid obesity to be one of Mr. Owens's severe impairments, and he discussed obesity when he assessed Mr. Owens's residual functional capacity. (Tr. 11, 13, 14-15)  Mr. Owens does not state how his obesity resulted in limitations that exceed the residual functional capacity ("RFC") determined by the ALJ.  The ALJ acknowledged that Mr. Owens alleged some problems with walking, but noted that, in spite of his obesity, Mr. Owens described his ability to perform basic household tasks and to drive himself.

The ALJ explicitly considered Mr. Owens's obesity and accounted for Mr. Owens's limitations by reducing his residual functional capacity ("RFC") to a restricted range of light work.

*Residual Functional Capacity*

Mr. Owens complains that the ALJ erred in finding he had the capacity to perform light work that avoids concentrated exposure to fumes, odors, gases, or poor ventilation and workplace hazards such as unprotected heights and dangerous machinery. (Tr. 13) Particularly, Mr. Owens claims that he cannot stand and/or walk for long periods. (#11 at p. 17)

At the hearing, Mr. Owens testified that he could not stand or walk for a long time. The ALJ noted, however, that this assertion was contradicted by the pulmonary function study showing only mild restriction, as well as Mr. Owens's testimony that he was able to live alone, complete household chores and do some light maintenance, and spend time with his 92-year-old grandmother. (Tr. 27-28, 144, 146)

Notably, none of Mr. Owens's treating physicians had restricted him from standing or walking. To the contrary, at a visit to Glen L. Loveday, M.D., on February 11, 2010, Mr. Owens was encouraged to get aerobic exercise, stop smoking, and eat a 1200-calorie diet. (Tr. 231)

As set forth above, Dr. Crow found that Mr. Owens was capable of performing light work, and this assessment was affirmed by Dr. Payne. (Tr. 357-364, 368) There is sufficient evidence in the record to support the ALJ's RFC assessment.

*Depression as a Severe Impairment*

Mr. Owens complains that the ALJ should have treated his depression as a severe impairment. (#11 at p. 19) A "severe" impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities.[5] *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir.1992).

Mr. Owens did not raise depression as an impairment causing disability in either of his applications for disability. See *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (a failure to "allege depression on [an] application for disability benefits is significant, even if the evidence of depression was later developed"). Further, he has not alleged any functional limitations caused by a disabling mental impairment. Mr. Owens had an opportunity to provide evidence at the administrative hearing relating to his alleged depression, but he failed to do so. (Tr. 22-33)

An ALJ is not obligated to "investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Gregg v.*

---

[5]"Basic work activities" include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; and the mental or nonexertional functions, such as capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; the use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in work routine. 20 C.F.R. § 404.1521(b)(1)-(6); 20 C.F.R. § 416.921(b)(1)-(6).

*Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)).

Here, in spite of Mr. Owens's failure to note depression as an impairment, in his opinion, the ALJ did not ignore allegations of depression. He noted that Mr. Owens had been prescribed at least two medications for depression but determined that there was no evidence indicating that depression significantly affected Mr. Owens's ability to work. (Tr. 11) Having found that Mr. Owens had several other severe impairments, the ALJ went on to properly consider Mr. Owens's depression in combination with his other impairments when assessing Mr. Owens's residual functional capacity. (Tr. 12-13, 15)

The record indicates that Mr. Owens did not routinely seek treatment for depression from his primary care physicians and never sought treatment or counseling from a mental health professional. Mr. Owens did not establish that his depression caused more than minimal limitations in his ability to perform basic work activity.

### *Conclusion*

Substantial evidence supported the ALJ's decision denying Mr. Owens's applications. The ALJ made no legal error. For these reasons, the court DENIES Mr. Owens's request for relief (docket entry # 2) and AFFIRMS the decision denying the application.

DATED this 15th day of February, 2013.

_____
UNITED STATES MAGISTRATE JUDGE